# CHARLESTON.

W. W. HANLY *et al v.* FRANK L. HARMISON.

Submitted November 15, 1921.    Decided November 22, 1921.

1.  REFORMATION OF INSTRUMENTS—*Relief Granted Only Where Evidence of Mutual Mistake is Clear, Positive and Direct.*

    Reformation of a written instrument because of a mutual mistake is one of the well recognized grounds of equity jurisdiction, but such relief will only be granted when the evidence offered to establish the mistake is clear, positive and direct, and so preponderates as to convince that there is error in the contract sought to be reformed. (p. 613).

2.  SAME—*Reformation Granted Where Supported by Direct, Positive, Testimony and Parties' Contemporaneous Construction.*

    Where the evidence offered in support of a bill to reform a contract consists of direct, positive and unequivocal state-

ments of two of the parties who conducted the preliminary
negotiations, as to what the agreements arrived at were,
which are supported by receipts given by the  other party
showing a contemporaneous construction by all of the parties
to the contract in accordance with the evidence offered in sup-
port of the bill to reform it, relief will be granted, notwith-
standing the other party to the negotiations testifies that the
contract as executed contains the agreement arrived at, but
on cross-examination states, when his attention is directed to
the negotiations in regard to the particular matter in respect
to which reformation is sought, that he does not recollect
whether there was any agreement in regard thereto or not.
Such an equivocal denial of the positive testimony of the other
parties, supported by the contemporary construction of the
contract by the parties, will not be effective to defeat reforma-
tion. (p. 613).

(LIVELY, JUDGE, absent.)


Appeal from Circuit Court, Hampshire County.

Suit by W. W. Hanly and others against Frank L. Har-
mison.   Decree in favor of the defendant, and the plain-
tiffs appeal.

*Reversed.*


*G. W. McCauley* and *Geo. E. Price,* for appellants.
*J. Sloan Kuykendall,* for appellee.

RITZ, PRESIDENT:

In this suit to enjoin an action of unlawful entry and de-
tainer, and to have reformation of a contract of lease, and
relief from an alleged forfeiture thereunder, the circuit court
denied the plaintiffs any relief, dissolved the temporary in-
junction granted them, and dismissed their bill, and this ap-
peal is prosecuted to review that decree.

The plaintiffs W. W. Hanly and John C. Shoupe, together
with one George R. Wheeler, entered into a contract of lease
with the defendant dated the 14th of August, 1907, by the
terms of which Harmison leased to them a small tract of
about one-half acre of land situate on the South Branch of
the Potomac River, together with the right to hunt and fish
on the farm of the defendant, as well as some other rights
not material to be considered in connection with the contro-

versy here involved. The purpose of the plaintiffs and their associates in leasing the land was to secure a place upon which they might erect a bungalow or cottage for the purpose of retiring thereto during the summer months. The term provided for in the lease was ten years, with the privilege of renewing it for an additional ten years. It is further provided that the lessees shall pay the lessor an annual rental of twenty-five dollars on or before the first of September in each year. It is also stipulated that the lessees shall purchase provisions and produce from the lessor and use his services in hauling from the railroad to the cottage when such provisions and produce are supplied, and such services rendered upon reasonable terms. Immediately after the execution of the lease the lessees began the erection of a cottage or bungalow upon the premises and completed it in a very short time. They claim that the amount expended by them in the erection of this cottage, and in improving the premises was some five or six hundred dollars, but that it would cost a very much larger sum at the time the testimony was taken because of the increased cost of labor and material. The three lessees, at the time of making the lease, were associated in business together at Cumberland, Maryland. Sometime thereafter Wheeler severed his connection with his associates and moved to the west, at which time he assigned all of his interest in the lease to the plaintiffs Hanly and Shoupe. The lessees have occupied the premises ever since the construction of the cottage thereon. The rentals, it seems were regularly paid. Harmison makes some complaint that during the continuance of the lease the plaintiffs did not purchase their produce and supplies from him, and did not permit him to do their hauling. They admit that such was the case, but say that the reason they purchased their supplies elsewhere and procured their hauling to be done by others was that they could secure the supplies very much cheaper from other sources, and procure their hauling to be done in a very much more satisfactory manner, and for less money, by others. Complaint is also made by Harmison that the plaintiffs permitted hunting and fishing to be done on Sunday on his premises, and indulged in the immoderate

use of alcoholic liquors. These charges are denied by the plaintiffs. They are not material to the determination of the controversy now before us, and are introduced in the record evidently for the purpose of furnishing a basis for the strained relations which existed between the parties during the latter years of the lease.

About the 19th of August, 1917, the defendant Harmison gave notice to the plaintiffs that the lease under which they were holding the premises had expired on the 14th of that month, and requiring them to at once vacate. They declined to do so, but insisted that they were entitled to keep the property for ten additional years under the renewal provision, and insisted that their original contract did not expire until the first of September of that year instead of the 14th of August, and demanded a renewal of the lease for an additional ten years. Some correspondence passed between the parties without result, when the defendant Harmison instituted an action of unlawful entry and detainer against the plaintiffs in this suit. This bill was thereupon filed in which the plaintiffs allege that there was a mutual mistake in the original lease, in this, that the agreement of the parties was that the term should commence on the 1st of September, 1907 and continue for ten years, making it expire with the 31st of August, 1917; while the language of the lease is that it is for a term of ten years from the date thereof, said date being the 14th of August; and averring that during the whole period all of the parties had treated the term as beginning on said first day of September, and had treated the annual rental period as extending from Sept. 1st to Sept. 1st; and praying that the plaintiff in the unlawful entry and detainer suit be enjoined from further prosecuting the same; that the lease be reformed so as to make the term therein provided begin on the first day of September, 1907, and the said Harmison be required to execute a renewal of said lease for an additional term of ten years from the first of September, 1917; or, if the evidence should turn out to be insufficient to justify relief by reformation, that the plaintiffs be relieved from the forfeiture of their right of renewal for an additional ten years by reason of their failure to demand

such renewal before the expiration of the original term, on the ground that such failure was due to inadvertance and mistake, and that Harmison well knew for sometime that they desired and would demand a renewal, and would not in any wise be injured thereby, while the plaintiffs, if they were denied the renewal, would lose the property which they had upon the premises without receiving the benefits which all of the parties expected they would receive therefrom at the time the contract was entered into. The court below granted a temporary injunction by which Harmison was restrained from prosecuting the unlawful entry and detainer suit. In answer to the bill he denied that there was any mistake in the contract, but asserted that it expresses the true understanding of the parties, and denied the right of the plaintiffs to have a renewal of the lease for an additional ten years. Evidence was taken by both parties, and upon a hearing the circuit court found that the plaintiffs were not entitled to relief upon either of the grounds set up in their bill, dissolved the temporary injunction granted, and dismissed the suit.

Should the court have reformed this contract upon the evidence offered for that purpose? It appears from this evidence that the parties who negotiated the contract were Shoupe and Wheeler on the one hand, and Harmison on the other, Hanly not being present at the time. Wheeler and Shoupe both testify that negotiations were conducted sometime in the month of August, and that they resulted in an agreement for the lease upon the terms expressed therein, except that it was definitely and positively agreed and understood that the rental period should begin on the first of September, 1907, which was only a few days after the negotiations. There is no equivocation or doubt in their testimony about this being the understanding as between them and Harmison. Wheeler says that he then wrote the contract when he returned to his home at Cumberland, Maryland, and by inadvertence omitted to state therein that the term should begin on September 1, 1907, and that he never noticed this omission until the controversy arose. In addition to this oral testimony there is introduced in evidence two receipts from Harmison for the rental for two years, which it is argued

show an understanding of the contract by all of the parties consistent only with the contention of the plaintiffs. One of these receipts is for the sum of $25.00, and recites in it that it is for ground rent from September 1, 1911 to September 1, 1912, as per agreement. The other recites that is is for ground rent from September 1, 1909 to September 1, 1910. The receipts for the rent for other years, if any were taken, are not accounted for, but some checks for the sum of $25.00, which it is shown were sent to Harmison for the annual rental, are introduced, which indicate, because of the dates therein, that the rent was paid as of the 1st of September, but there is no statement in them as to when the rental year began. When Harmison testified he, in general terms, swore that the contract correctly expressed the agreement had between him and Wheeler and Shoupe, and he attempts to explain the two receipts introduced in evidence and above referred to by saying that the rental years therein referred to should have commenced on the 14th of Aug. instead of on the first of September. It is significant that while both Shoupe and Wheeler testify that there was a positive understanding and agreement, after negotiations, as to the date at which the lease should commence, Harmison on cross-examination says he does not think there was any definite time agreed upon; that there might have been, but he will not be positive about it.

That equity has jurisdiction to reform a contract because of a mutual mistake is not questioned, nor can there be any question that when such reformation is resisted the evidence to justify the same must be clear, convincing and satisfactory. When, however, the evidence is of that character, a court of equity will not hesitate to reform a contract and make it speak the real agreement of the parties. The fact that one of the parties denies the right of reformation will not defeat relief, for it may be said as a general rule that if all of the parties were agreed upon this question there would be no litigation. Such a controversy arises as a rule upon the refusal of one of the parties to submit to any change in the contract as written. As above indicated, the oral evidence of Shoupe and Wheeler is clear, positive and direct that the term was to begin on the 1st of September, 1907, while the

testimony of Harmison, when directed to their negotiations upon this particular question, is simply that he does not recollect. If the case depended solely upon the oral testimony it seems to us that it meets the requirements of the law, but in addition to this oral testimony there is another element which in our judgment is conclusive in favor of the plaintiffs. The receipts introduced in evidence show upon their face that the parties treated the rental years as beginning on the first of September, and ending upon the first day of the following September. Why would Harmison have put such language in a receipt for the rents if that was not the agreement of the parties? And it is significant that even after this controversy arose Harmison's counsel, in a letter dated August 21, 1917, in referring to a check sent by the plaintiffs to Harmison, uses this significant language: ''I presume you mean this check to pay for the lease of F. L. Harmison to W. W. Hanly, J. C. Shoupe and George R. Wheeler for the year 1916-17, viz., to September 1, 1917.'' It seems that the parties were so impressed with the fact that the lease began on the first of September that even after the controversy arose Harmison's counsel expressed this view as above indicated. The evidence in this case upon the part of the plaintiffs is of that clear, positive and direct character required for the reformation of a contract, and it is met only by the equivocal statements of the defendant. Of course, the written contract is presumably correct. The parties have executed it, and there is a very strong presumption that all of their pertinent prior negotiations are correctly embodied in it. This presumption, however, as before stated, may be rebutted, but because of the peculiar weight to which written contracts are entitled between the parties, the evidence to do so must satisfy the court that a mistake has been made. When this character of evidence is produced and the court is fully satisfied that one of the parties is being deprived of a substantial right because of such a mistake, it will not hesitate to grant relief by way of reformation. *Melott* v. *West*, 76 W. Va. 739.

In this case the evidence convinces us that the plaintiffs are right in their contention, and we will, therefore, reverse

the decree of the court, below; reinstate and perpetuate the temporary injunction; and enter a decree here reforming the contract of lease so as to make the term begin on the first of September, 1907, and requiring the defendant Harmison to execute a renewal of said lease for an additional term of ten years beginning on the first of September, 1917; and remand the cause for the purpose of executing this part of the decree by a commissioner of the court, should the defendant fail or refuse to execute and deliver such renewal; with costs to the plaintiffs in this Court, and in the court below.

*Reversed.*