301 S.E.2d 570

**Chester David WEBB**

v.

**Lillian WEBB, etc., et al.**

**No. 15535.**

Supreme Court of Appeals of West Virginia.

March 24, 1983.

Robert J. Ashworth, Beckley, for appellant.

F. Alfred Sines, Beckley, for appellees.

McGRAW, Chief Justice:

This case comes to us on appeal from the final order of the Circuit Court of Raleigh County which dismissed a declaratory judgment action instituted by the appellant, Chester David Webb. The appellant commenced the civil suit to have a disclaimer of property interests by intestate succession declared void and set aside on the ground of mistake. The circuit court found that the mistake asserted by the appellant was one of law and concluded that the appellant was therefore entitled to no relief. We agree with the ruling of the circuit court, and we affirm.

On March 24, 1979, Chester G. Webb died intestate, survived by his widow, Lillian Webb, and one adopted son, appellant Chester David Webb. The decedent's estate included a one-half undivided interest in the marital abode of the decedent and Lillian Webb. Under the laws of descent and distribution, title to this interest passed to the appellant, as the only surviving child of the decedent, subject to the dower interest of Lillian Webb. W.Va.Code §§ 42–1–1; 43–1–1 (1982 Replacement Vol.).[1]

Shortly after the funeral, the appellant and his mother consulted John Rist, a Beckley attorney. Believing that his father had desired Lillian Webb to have fee title to the real property,[2] the appellant sought Rist's legal advice on the best method of effecting the decedent's wishes. Upon Rist's inquiry as to his marital status, the appellant stated that he was single and had been living in his own home in Florida for the past ten years. It appears from the record

---

1. As to the rights of inheritance of adopted children and their adoptive parents, *see* W.Va. Code §§ 48–4–3; 48–4–5; 48–4–7 (1980 Replacement Vol.).

2. It appears that Chester G. Webb had commissioned Rist to prepare a will disposing of his property in this manner but died before the will could be executed.

that prior to his father's death the appellant had twice been married and divorced, and that one of these marriages had produced a child, an infant daughter, who lived with her mother, Carol Webb. The appellant did not reveal this information to the attorney. Rist, who had no knowledge of the appellant's marriages and divorces, did not pursue the inquiry into the existence of any progeny. Rist advised the appellant that he could release his statutory share of the estate by means of a disclaimer of property interests passed by the law of intestate succession. Rist prepared the disclaimer, which was executed on April 3, 1979 and recorded on April 17, 1979.

Rist learned of the appellant's previous marriages and of the existence of the appellant's daughter in September 1979, when he was asked to represent the appellant in a nonsupport action brought by the child's mother in magistrate court in Beckley. Rist advised the appellant that, in these circumstances, the statutory effect of the disclaimer was to vest title to the appellant's share of the estate in his daughter rather than in his mother. The appellant instituted a declaratory judgment action in the circuit court to have the disclaimer declared void and set aside on the ground of mistake, naming Lillian Webb, Carol Webb and the infant child as parties defendant.

A hearing was held on April 10, 1981, at which the appellant testified that at the time of the discussion with Rist he was aware of the existence of the child, but that he did not think that fact was important and therefore made no mention of it. Rist's testimony indicates that he took the appellant's statement that he was single to mean that the appellant had never been married and had no children. Rist testified that had he known of the existence of the child, he would have advised the appellant to execute a deed conveying his interest in the estate to his mother, instead of the disclaimer. Although some testimony was elicited indicating that Rist, the appellant

and Lillian Webb had discussed the tax advantages of executing a disclaimer, it is apparent from the record that the appellant's motivation in executing the disclaimer was to pass full title to the real estate to his mother, Lillian Webb, in accordance with his perception of his father's wishes.

From this evidence, the circuit court concluded that the mistake of the appellant in executing the disclaimer was a mistake of law rather than a mistake of fact, and denied relief on that ground. By order entered November 13, 1981, the lower court denied the appellant's petition for declaratory judgment and dismissed the civil action. It is from this order that the appellant now prosecutes this appeal.

The appellant contends that the circuit court erred in concluding that the disclaimer was executed while the appellant was laboring under a mistake of law. In the alternative, the appellant argues that even if the circuit court believed that the appellant had committed a mistake of law, relief should have been granted since the appellant was a nonresident of this State and acted under the advice of local counsel as to the laws of this State.

Before we turn to the issues raised by the appellant, a brief discussion of the nature of the disclaimer executed by the appellant is in order. The disclaimer in this case was governed by the provisions of W.Va.Code § 42-4-3 [1977], the statute in effect at the time of Chester G. Webb's death.[3] That statute provides, in pertinent part:

> Any heir at law or distributee under the laws of descent and distribution who is sui juris, shall have the right, within six months of the date of death of the decedent, to disclaim such real or personal property in whole or in part. The property so disclaimed shall pass by the laws of descent and distribution of this State as if the person so disclaiming and immediately predeceased the decedent.

---

**3.** In 1982 the Legislature repealed this section, relating to disclaimer of gifts under wills or property passing by intestate succession, and enacted the Uniform Disclaimer of Property Interests Act, the provisions of which are now contained in W.Va.Code § 42-6-1 *et seq.* (1982 Replacement Vol.). 1982 W.Va.Acts ch. 42.

The purpose of this statute was to permit the heir of an intestate decedent to disclaim or renounce his share of the estate in favor of other heirs or distributees after the decedent's death, an act which was not permitted at common law. At common law, a devisee or legatee under a will had the power to prevent the passing of title to him by renouncing the gift, the theory being that the testator had no right to force title upon anyone and that the interest vested only upon acceptance by the devisee or legatee. However, in the case of intestacy, the common law viewed the distributee as incapable of renouncing his interests, since title to the property passed by operation of law and vested in the heir immediately upon the death of the decedent. *See* 23 Am.Jur.2d *Descent and Distribution* §§ 171–172 (1965).

Although there is no case law in this jurisdiction which describes the circumstances under which a disclaimer of interests by intestate succession may be set aside, authority from other jurisdictions indicates that such cases are governed by the equitable principles relating to rescission or reformation of contracts and cancellation of instruments generally.[4] *See, e.g., In re Wolfrum's Estate,* 120 Ohio App. 379, 202 N.E.2d 631 (1964).

■ The appellant asserts that he was entitled to have the disclaimer set aside because he was laboring under a mistake of fact when he executed it. As a general rule, one who enters into a contract or performs some act while laboring under a mistake of material fact is entitled to have the transaction or the act set aside in a court of equity; however, an individual should not be permitted to avoid obligations he undertook while laboring under a mistake of law. *Burton v. Haden,* 108 Va. 51, 60 S.E. 736 (1908); *Harner v. Price,* 17 W.Va. 523 (1880). The rationale underlying this rule was explained in *Harner v. Price, supra:*

"The ground of this distinction between ignorance of law and ignorance of fact seems to be, as every man of reasonable understanding is presumed to know the law, and to act upon the rights, which it confers or supports, when he knows all the facts, it is culpable negligence in him to do an act, or make a contract, and then to set up his ignorance of law as a defence. The general maxim here is, as in other cases, that the law aids them, who are vigilant, and not those who slumber over their rights. And this reason is recognized as the foundation of the distinction, as well in the civil law as in the common law. But no person can be presumed to be acquainted with all matters of fact; neither is it possible by any degree of diligence in all cases to acquire that knowledge; and therefore an ignorance of fact does not import culpable negligence." 17 W.Va. at 544. *See also Eye v. Nichols,* 137 W.Va. 75, 82, 70 S.E.2d 264 (1952).

■ The distinction between mistake of fact and mistake of law is easily stated. A mistake of fact consists of an unconscious ignorance or forgetfulness of a material fact, past or present, or of a mistaken belief in the past or present existence of a material fact which did not or does not actually exist. A mistake of law, on the other hand, consists of a mistaken opinion or inference arising from an imperfect or incorrect exercise of judgment upon the facts as they really are and occurs when a person, having full knowledge of the facts, is ignorant of or comes to an erroneous conclusion as to the legal effect of his acts. *Virginia Iron, Coal & Coke Co. v. Graham,* 124 Va. 692, 98 S.E. 659 (1919); *Briggs v. Watkins,* 112 Va. 14, 70 S.E. 551 (1911); *Shriver v. Garrison,* 30 W.Va. 456, 4 S.E. 660 (1887); *Harner v. Price, supra. Generally,* Black's Law Dictionary, 903 (5th ed. 1979); 54 Am.Jur.2d *Mistake, Accident, or Surprise* §§ 4, 8 (1964).

---

4. It should be noted that the circuit court erroneously characterized the disclaimer in this case as a contract between the appellant and his mother. A disclaimer of interests by intestate succession is not a contract or a conveyance, but rather an extinguishment of the distributee's right to take any estate by descent. *See Williams v. Swango,* 365 Ill. 549, 7 N.E.2d 306 (1937). However, since the general equitable principles governing rescission of contracts apply in this case, this error on the part of the lower court is not fatal.

■ Application of this distinction to individual cases has proven more difficult than the statement of it. Often mistakes of material fact have legal consequences, making it possible to argue persuasively that the mistake is one of law. In addition, courts have formulated numerous exceptions to the general rule that a transaction or act of a party will not be set aside on the ground of mistake of law, in some cases equating the mistake of law with one of fact. *See* 54 Am.Jur.2d *Mistake, Accident, or Surprise* § 12.[5] Consequently, the determination of whether an error underlying the execution of a written instrument constitutes a mistake of fact or a mistake of law for the purposes of setting aside of that instrument should be controlled by the circumstances of each case.

■ We are of the opinion that the circuit court correctly categorized the mistake in this case as a mistake of law. The appellant's error here was not occasioned by his ignorance or forgetfulness of the fact that he had a child living at the time he executed the disclaimer. If that had been the case, we think the error could clearly be called a mistake of material fact which might afford grounds for rescission of the disclaimer. However, the appellant admits that when he executed the disclaimer he was fully aware of the existence of his daughter. His failure to advise counsel of her existence was the result of an active assumption that this fact was not relevant to the result he sought to accomplish by executing the disclaimer. The appellant's error is the result of his ignorance or misunderstanding of the legal consequences of his actions. Such an error may properly be classified as a mistake of law. *See Eye v. Nichols, supra.*

The appellant contends, however, that even if the circuit court correctly concluded that the error was a mistake of law, he is nevertheless entitled to have the disclaimer set aside on the ground that, as a long-term resident of Florida, he cannot be charged with knowledge of the laws of West Virginia. The appellant alleges that by seeking and following the advice of local counsel as to the laws of this state, he acted in a diligent manner. He argues that the mistake was, if anything, a mistake of fact on the part of counsel who, without knowledge of all of the facts, advised the appellant and prepared the disclaimer for execution. The appellant asserts that he should not be held accountable for counsel's failure to make further inquiries into the matter.

■ A mistake as to the laws of a country or state other than that in which the mistaken party is domiciled is generally treated as a mistake of fact which may be relieved by cancellation or recession. *See Annot.* 73 A.L.R. 1260 (1931); 27 Am. Jur.2d *Equity* § 42 (1966); 54 Am.Jur.2d *Mistake, Accident, or Surprise* § 13. Although one is presumed, as a matter of public policy, to know the laws of the state in which he resides, it would be unreasonable in most circumstances to presume that an individual is familiar with the laws of all other jurisdictions. *Bolinger v. Beacham,* 81 Kan. 746, 106 P. 1094 (1910); *Shannon v. Ryan,* 91 N.J.Eq. 491, 111 A. 155 (1920); *Vinal v. Continental Construction & Implement Co.,* 60 N.Y.Sup.Ct. 247, 6 N.Y.S. 595 (1889). Consequently, familiarity with

---

5. For example, it is generally recognized that a mistake as to the legal effect of a contract, though a mistake of law, will be treated as a mistake of material fact where the mistake is mutual, or common to all parties to the transaction, and results in a written instrument which does not embody the "bargained-for" agreement of the parties. *Virginia Iron, Coal & Coke Co. v. Graham, supra; Melott v. West,* 76 W.Va. 739, 86 S.E. 759 (1915); *Biggs v. Bailey,* 49 W.Va. 188, 38 S.E. 499 (1901); *Jarrell v. Jarrell,* 27 W.Va. 43 (1886).

It is also well-settled in the Virginias that where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, such as a mistake as to his title or interest in real property, and enters into a transaction, the legal scope and operation of which he correctly understands, for the purpose of affecting his assumed rights, equity will grant relief, treating the mistake as analogous to, if not identical with, a mistake of law. *Robinson v. Shepherd,* 137 Va. 687, 120 S.E. 265 (1923); *Burton v. Haden, supra; Webb v. City of Alexandria,* 74 Va. 38 (Gratt. 168, 1880); *Roberts v. Crouse,* 89 W.Va. 15, 108 S.E. 421 (1921); *Harner v. Price, supra. See also* 54 Am.Jur.2d *Mistake, Accident, or Surprise* § 10.

the laws of a foreign jurisdiction is ordinarily treated as a matter of fact.

■ We are of the opinion, however, that the appellant is not entitled to the benefit of this rule in the case at bar for two reasons. First, it is recognized that a party may not avoid the legal consequences on the ground of mistake, even a mistake of fact, where such mistake is the result of the negligence of the complaining party. *Eye v. Nichols, supra; Taylor v. Godfrey,* 62 W.Va. 677, 59 S.E. 631 (1907); *Pennypacker v. Laidley,* 33 W.Va. 624, 11 S.E. 39 (1890); *Harner v. Price, supra.* We believe the appellant was negligent in his failure to reveal to counsel the existence of his infant daughter. The appellant's awareness that his daughter may have had some rights of inheritance should have been piqued, if only by virtue of the fact that he received his interest in the estate by virtue of the intestacy of his father. Although there may be some justification for the appellant's failure to familiarize himself with the intricacies of our law so as to ascertain the precise nature of his daughter's rights, we find no justification for his assumption that she had no rights whatever. We think it reasonable to assume that in similar circumstances a person of ordinary intelligence would be aware that children have some inheritance rights under the laws of all jurisdictions within the United States. Consequently, we conclude that if there was a mistake in this case, it was attributable to the negligence of the appellant.

■ Secondly, even if we were to hold that the appellant was under no obligation to reveal or to take into consideration this crucial fact, we would hesitate to allow the appellant to prevail on the ground that, as a nonresident, he was not chargeable with knowledge of our laws due to the fact that he consulted with and followed the advice of an attorney licensed to practice law in this state. Where a nonresident acts upon the advice of local counsel, whose knowledge of the local law is presumed as a matter of public policy and as a natural inference resulting from counsel's legal training and his license to practice law, such nonresident cannot avoid the legal consequences of his actions on the ground of ignorance of the local law. *See Rieckhoff v. Woodhull,* 106 Mont. 22, 75 P.2d 56 (1937).

Nor do we think the appellant is entitled to relief on the ground that counsel committed a mistake of fact. Certainly under our general definition, counsel's advice to the appellant and his preparation of the disclaimer for execution without full knowledge of the facts would appear to be the result of a mistake of fact.[6] We are of the opinion that counsel's mistake, like that of the appellant, arises from a lack of diligence. We believe that, in the circumstances presented, counsel had a duty to inquire of the appellant whether he had any children before advising him to execute the disclaimer.

■ We do not think, however, that counsel's failure to ascertain the true state of the appellant's familial relationships forms a basis for invalidating the disclaimer. In this case the appellant committed a mistake of law and counsel committed a mistake of fact. In both instances the mistake was the result of an omission on the part of the one who committed it. Either person could have, it is assumed, prevented the execution of the disclaimer by acting diligently: the appellant, by revealing to counsel facts of which he was aware and which he should have known to have a bearing on the legal result he sought to effect, and counsel, by making further inquiry into the relevant aspects of the appellant's background. In view of the lack of

---

6. The appellant likens this mistake of his counsel to a "mistake of the scrivener" which is generally treated as a mistake of fact for which a written instrument may be set aside. However, the West Virginia cases dealing with "mistake of the scrivener" indicate that the rule applies only where the parties to a transaction clearly express the facts and their intent with respect to them and the person who drafts the written instrument mistakenly produces a document which does not embody the agreement of the parties. *Stickley v. Thorn,* 87 W.Va. 672, 106 S.E. 240 (1921); *Melott v. West,* 76 W.Va. 739, 86 S.E. 759 (1915); *Smith v. Owens,* 63 W.Va. 60, 59 S.E. 762 (1907); *Taylor v. Smith, supra.* These factors are not present in the case at bar.

diligence on the part of both the appellant and counsel, we cannot say that the mistakes in this case, taken separately or together, are such that would justify invalidating the disclaimer. Negligence, if any, is a matter between the appellant and counsel, and does not, in our opinion, affect the validity of the disclaimer.

For the reasons stated above, we conclude that the Circuit Court of Raleigh County did not err in holding that the appellant was not entitled to declaratory judgment. Accordingly, we affirm the judgment of that court.

Affirmed.